IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: THE MATTER OF TAIRA ) | |
| LYNN LIMITED NO. 7, etc., et al., ) | |
| PRAYING FOR EXONERATION ) | CIVIL ACTION 13-0318-WS-C |
| FROM OR LIMITATION OF ) | |
| LIABILITY ) | |

**ORDER**

This matter is before the Court on the motion of certain claimants to "bifurcate the limitation and merits issues and to try the core limitation issues first." (Doc. 103). Certain other claimants have joined in the motion. (Docs. 122, 123). Those parties sufficiently interested have filed briefs in support of their respective positions, (Docs. 104, 130-36), and the motion is ripe for resolution.[1]

On April 24, 2013, a fire and explosions occurred on the Mobile River. Several persons injured thereby, including the movants, filed lawsuits in state court and demanded trial by jury of all issues. Among the defendants in those actions are the asserted owners of four vessels arguably connected with the incident. The owners then filed three separate petitions for exoneration or limitation in this Court. The Court stayed the state actions pending resolution of the petitions and, upon motion, consolidated the petitions into this action.

The movants propose that the issues herein be bifurcated between, on the one hand, "core limitation issues" (which they define as the owner's privity or knowledge vel non)[2] and, on the other, everything else, with the former being litigated first so that a determination on limitation is obtained and, should

---

[1] The motion for leave to file a sur-reply, (Doc. 136), is **granted**, as the brief addresses only cases the movants heavily relied upon, and addressed for the first time, in their reply brief.

[2] The quoted term appears to be the movants' invention, since the Court's computerized searches have failed to uncover any case utilizing it.

limitation be denied, the stay lifted so that all further proceedings (including a determination of liability vel non) occur in state court. This, they say, is the best way to resolve (or mitigate) the tension between the Limitation Act and the "saving to suitors" clause of Section 1333.[3]

With exceptions and contours not relevant here, a vessel owner may limit its liability for a maritime casualty to its proportionate interest in the vessel and pending freight if occasioned "without the privity or knowledge of the owner." 46 U.S.C. § 30505. "Federal courts have exclusive admiralty jurisdiction to determine whether the vessel owner is entitled to limited liability. [citations omitted] In limitation proceedings, as in all admiralty cases, there is no right to a jury trial." *Beiswenger Enterprises Corp. v. Carletta*, 86 F.3d 1032, 1036-37 (11th Cir. 1996). The saving to suitors clause, in contrast, "embodies a presumption in favor of jury trials and common law remedies in the forum of the claimant's choice." *Id*. at 1037.

"Courts have attempted to give effect to both the Limitation Act and the saving to suitors clause whenever possible, by identifying two sets of circumstances under which the damage claimants must be allowed to try liability and damages issues in a forum of their own choosing." *Beiswenger*, 86 F.3d at 1037. "The first circumstance arises where the limitation fund exceeds the aggregate amount of all the possible claims against the vessel owner. … The second circumstance exists where there is only one claimant." *Id*. The movants acknowledge that neither circumstance is presented here.

As the movants concede, "[t]his case is a classic example of a Limitation Act case, being the 'multiple claimants, inadequate fund' situation …." (Doc. 104

---

[3] In a perfect world, the movants would have the tension resolved by favoring the statute signed into law by the chief executive more highly esteemed by posterity, as they remind the Court (five times) that George Washington was president when the predecessor to Section 1333 was enacted, Millard Fillmore when the predecessor of the modern Limitation Act became law. Fortunately for all concerned, the movants recognize the world is not perfect.

2

at 5). "In genuine 'multiple-claims-inadequate-fund' cases, the courts have not allowed damage claimants to try liability and damages issues in their chosen fora, even if they agree to return to the admiralty court to litigate the vessel owner's privity or knowledge. … Thus, the damage claimants in a true multiple-claims-inadequate-fund case may not proceed against the vessel owner except in the admiralty court." *Beiswenger*, 86 F.3d at 1038. Although the *Beiswenger* Court held that claimants can transform such a case "into the functional equivalent of a single claim case" (and thereby be permitted to try liability and damages issues in state court) by presenting stipulations adequately ensuring that the vessel owner will not be exposed to judgments exceeding the limitation fund, *id*. at 1039-40,[4] the movants concede that this avenue is not open to them, because some of the claimants refuse to enter the necessary stipulations.

The Eleventh Circuit also recognizes a fourth circumstance under which a claimant may obtain a determination of liability in state court despite the filing of a limitation petition. "If it is truly impossible under any set of circumstances for [the limitation plaintiff] to establish its lack of privity or knowledge, then the limitation action should be dismissed, and the [claimants] should be allowed to try liability and damages issues in state court." *Suzuki of Orange Park, Inc. v. Shubert*, 86 F.3d 1060, 1064 (11th Cir. 1996) (describing *Fecht v. Makowski*, 406 F.2d 721 (5th Cir. 1969)). In *Fecht*, impossibility was shown because the owner was the operator of the vessel, such that, "[i]f there was negligence in the operation of the motorboat, only he could have been guilty of it" and, as a matter of law, "when an owner is in control of and operating his pleasure craft he has privity or knowledge with respect to its operation." 406 F.2d at 722-23. The movants do not suggest that this scenario is in play.

---

[4] The two principal forms of stipulations are those reducing the total amount of all claims to no greater than the limitation fund and those structuring the priority of the claims for payment out of the fund. *Beiswenger*, 86 F.3d at 1039-40.

3

In summary, then, the Eleventh Circuit has recognized four "sets of circumstances under which the damage claimants must be allowed to try liability and damages issues in a forum of their own choosing," and this case falls within none of them. That would seem to be the end of the matter, but the movants are undeterred. They seek a state-court resolution of liability by getting a favorable ruling herein on limitation without also receiving a ruling on liability. The law, however, is squarely against them.

> The determination of whether a shipowner is entitled to limitation employs a two-step process. First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident. Second, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness. Knowledge or privity of any fact or act causing the accident is not enough for denial of limitation; it is only knowledge or privity of negligent acts or unseaworthy conditions which trigger a denial of limitation. [citations and footnote omitted] And, although the petitioner in limitation bears the burden of proving lack of privity or knowledge, the initial burden of proving negligence or unseaworthiness rests with the libellants.

*Farrell Lines, Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976*); accord Suzuki*, 86 F.3d at 1062-63; *Beiswenger*, 86 F.3d at 1036. That is, a determination of liability (consisting of determinations that negligence occurred or that unseaworthy conditions existed and that such negligence and/or unseaworthiness caused the accident) must precede a determination of limitation (consisting of a determination of privity or knowledge vel non). This order of resolution is in effect whether liability is determined in state court (when one of the three *Beiswenger* circumstances exists) or in federal court (when they do not).[5]

The movants, however, insist that the Supreme Court has affirmatively "held" that the "best" practice is to routinely resolve the privity or knowledge (i.e., limitation) issue without first resolving the liability issue, thereby preserving for later jury trial in state court all liability issues should limitation be denied. (Doc.

---
[5] The only exception to this order of resolution arises in the *Fecht* situation, when limitation is facially impossible.

4

104 at 3-4). All that need be done in order to resolve the privity or knowledge issue, they say, is for the claimants to "identify" the acts, omissions and/or conditions which they claim to be negligent or unseaworthy. The limitation court then assumes for argument that: (1) the acts, omissions and/or conditions occurred or existed; (2) they rise to the level of negligence or unseaworthiness; and (3) they caused the accident. The limitation plaintiff then must satisfy its burden of proving the owner's lack of privity or knowledge and, if it fails, the limitation proceeding is dismissed and the claimants return to their state fora. Should the limitation plaintiff carry its burden, additional proceedings in federal court are scheduled in order to determine the three elements of liability listed above. (*Id*. at 21-23).

Proceeding in the manner suggested by the movants arguably would impinge less on the saving to suitors clause than other possibilities, and the appellate courts defensibly could have structured the limitation procedure as the movants propose.[6] But they have not done so, at least not so far as the movants' authorities disclose. At the Supreme Court level, the movants cite a number of cases but none for the proposition that their proposed bifurcation is appropriate, much less preferred.

Within the Eleventh Circuit, both *Beiswenger* and *Suzuki* embrace the *Farrell Lines* formulation quoted above, which explicitly requires the claimants to "prov[e] negligence or unseaworthiness" before privity or knowledge is addressed. 530 F.2d at 10. The movants insist that *Suzuki* really favors their position, (Doc. 104 at 22), but the excerpt which they quote specifies that "privity or knowledge is not measured against *every* fact or act regarding the accident; rather, privity or knowledge is measured against the specific *negligent* acts or *unseaworthy* conditions that *actually* caused or contributed to the accident." 86 F.3d at 1064

---

[6] As the movants note, (Doc. 104 at 16-21), the Limitation Act does not of itself compel that liability, as opposed to limitation of liability, be resolved by a federal admiralty court.

5

(emphasis added).  The movants emphasize that "the admiralty court may decide the privity or knowledge issue without first deciding the liability issue," 86 F.3d at 1064, but the same sentence of *Suzuki* limits this proposition to "where the boat owner concedes privity or knowledge, or where it is otherwise impossible under any set of circumstances for the vessel owner to demonstrate the absence of privity or knowledge." *Id*.  As *Fecht* reflects, this impossibility must appear initially, not for the first time after full consideration of the limitation issue.

In their reply brief, the movants insist that *Farrell Lines* supports its position because, when the appellate court says "determine," it means only "identify." (Doc. 135 at 3 & n.5).  The suggestion is untenable.  For it to be otherwise, the appellate court must have meant the following nonsense:  "The [identification] of whether a shipowner is entitled to limitation employs a two-step process.  First, the court must [identify] what acts of negligence or conditions of unseaworthiness caused the accident.  Second, the court must [identify] whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness." 530 F.2d at 10.  The movants also ignore *Farrell Lines'* explicit statement that the claimants must "prov[e] negligence or unseaworthiness" before privity or knowledge is addressed.  *Id*.

Also in their reply brief, the movants argue that various trial court decisions – all from outside the Eleventh Circuit – have ruled that the *Farrell Lines* formulation does not obtain when a claimant has filed a state action before the limitation proceeding is commenced. (Doc. 135 at 10-16).  Each of the cases they cite involved the *Fecht* scenario and relied directly or indirectly on *Fecht*.  None supports the proposition that a limitation proceeding, not dismissed based on the plaintiff's facial inability to prove absence of privity or knowledge, may proceed to that issue without first resolving liability.

As discussed above, the recognized means of avoiding a federal determination of liability in a limitation proceeding are few and narrow.  The movants' proposed procedure, in contrast, necessarily would apply in every

6

limitation proceeding, so long as a claimant had filed (or expressed interest in filing) a separate action. It cannot easily be concluded that the Eleventh Circuit would fling wide open a door it long has intentionally held almost fully shut.

In sum, the authorities made known to the Court carefully restrict the circumstances under which a claimant may obtain a determination of limitation prior to a determination of liability, and none approves the movants' position or intimates that such approval would be forthcoming upon request. That the movants would balance differently the competing policies of the Limitation Act and the saving to suitors clause furnishes the Court no grounds for ignoring rules long established.

Without any real discussion, the movants assert that, even should liability be resolved in these proceedings, if limitation of that liability is then denied, questions of damages and contribution should be resolved in state court. (Doc. 104 at 23). The question appears premature but, in any event, the movants' failure to address it adequately precludes the Court from resolving it.

The movants' principal brief seeks resolution of limitation without prior resolution of liability on the exclusive ground that their rights under the saving to suitors clause demand it. In their reply brief, the movants add a second ground: that, under Rule 42(b), such an ordering of issues would promote convenience, avoid prejudice and/or expedite and economize resolution of the action. (Doc. 135 at 2, 4-9). "District courts, including this one, ordinarily do not consider arguments raised for the first time on reply,"[7] and the movants identify no reason to depart from this well-established rule. Even were the Court to consider this untimely argument, it would exercise its "broad discretion," (*id*. at 4), against invocation of the rule. First, the Court is unpersuaded that Rule 42(b) is appropriately utilized to reverse the order of resolution established by the Eleventh Circuit. Second, the movants offer no analysis of Rule 42(b) or the application of

---

[7] *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 n.8 (S.D. Ala. 2012) (citing cases and explaining the underlying rationale).

its requirements to this case. Third, their only authority for employing the rule in the limitation context (a case which actually did not invoke Rule 42(b)) involved "a complex matter requiring special case management provisions," (Doc. 135 at 6), which conditions have not been shown to exist here.

For the reasons set forth above, the motion to bifurcate the limitation and merits issues and to try the core limitation issues first is **denied**.

DONE and ORDERED this 26th day of November, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE